## WILLIAMS *et al. v.* MITCHEM; *et vice versa.*

1. The petition in an action of trover, instituted to recover possession of " one bale of cotton in seed, gathered," and other " crops not gathered," set forth a cause of action for recovery of the bale of cotton, and was not subject to the general demurrer, which was directed against the petition in its entirety.
2. It is a conversion for a " cropper," as defined in the Civil Code, § 3707, without consent of the landlord, to gather and sell a part of the crop and apply the proceeds to his own use. The contract between the plaintiffs and defendant created the relation of "landlord and cropper," as defined in the Civil Code, § 3707.
3. The evidence was sufficient to authorize a verdict for the plaintiffs for recovery of one bale of cotton; and it was erroneous to grant a nonsuit.
4. Agricultural crops raised by a "cropper" do not become personalty until they are detached from the soil; and the owner of the land can not employ the remedy provided in the Civil Code, § 4483, generally applicable for the recovery of the possession of personalty, for the purpose of recovering from the "cropper" possession of the crops raised by him, while they remain attached to the soil,

5. It is unnecessary to rule upon certain assignments of error on the admission of evidence, as the same questions will not likely arise on a further trial of the case.

6. A suit was brought by landlords against a "cropper," to recover possession of crops raised by the latter, some part of which had been converted into personalty and the balance remained attached to the soil; in connection with such suit one plaintiff made and filed an affidavit as to the value of all the property, etc., for the purpose of requiring bail under the provisions of the Civil Code, § 5150; the defendant refused to execute bond; the plaintiffs, in order to obtain possession of the property, executed a bond payable to the defendant in double the value of all the property, for the forthcoming of such personalty and realty to answer the judgment or decree that may be rendered in the case, and upon execution of such bond received possession of all of the property sued for. *Held*, that such bond so executed by the plaintiffs was not a statutory bond, within the meaning of the Civil Code, §§ 5150-5152, upon which the judge could summarily enter a judgment for the defendant against the principal and sureties named in the bond, on nonsuit or dismissal of the case.

(*a*) The bond is a sufficient common-law bond, upon which a separate action could be instituted.

No. 2053. MARCH 3, 1921.

Certiorari; from Court of Appeals. *25 Ga. App.* 138.

On August 30, 1918, T. J. Williams and Y. D. McCollum instituted an action against C. E. Mitchem in the city court of Morgan, Calhoun County. The petition alleged that the defendant was in possession of " all of the crops of cotton, cottonseed, corn and folder, peanuts, grown during the year 1918 " on a described plantation, " there being (30) thirty bales of cotton, mature, in the field ungathered, and one bale of cotton in seed, gathered, (4000) four thousand bushels of peanuts, in the field ungathered, but mature and ripe for gathering, and (1500) fifteen hundred bushels of corn, and all fodder in stacks, mature, standing in field ungathered, . . and said property being of the aggregate value of ($10,000) ten thousand dollars." That the said defendant refuses to deliver the above-described property to petitioners or to pay them the profits thereof, though petitioners have made such demand for same upon him. That the yearly value of said property is ($2,000.00) two thousand dollars. Wherefore petitioners pray that process may issue," etc. The petition was subsequently amended by alleging that " Petitioners claim title to said property," and by inserting in paragraph 2 of the petition the words "more or less" following the words " 30 bales of cotton " and " 4000 bushels of peanuts " and " 1500 bushels of corn," as employed in that paragraph.

On the day the petition was filed, one of the plaintiffs made an

affidavit before the clerk of the court, in which, among other things, it was said that plaintiffs had instituted the suit above-mentioned to recover the property. The property was described in the same language as above set forth in the petition. After describing the property it was said: "That deponent has· reason to apprehend that said property will be eloigned and moved away and will not be forthcoming to answer the judgment that may be made in said case, and said property is in the possession, custody of defendant, C. E. Mitchem, and that said firm does verily and bona fide claim said described property." On September 2, 1918, the plaintiffs as principals and named persons as sureties executed a bond payable to the defendant, in the sum of twenty thousand dollars. The property was described in the bond by the same language as employed in the petition. It was stated in the bond, that the plaintiffs had instituted the suit above mentioned; that plaintiffs had "required bail" of the defendant; that the sheriff had seized the property; that defendant had failed to give the bond "required by law in such cases provided;" and that plaintiffs desired to take the property in their possession. The condition of the bond was that should the plaintiffs "produce or cause to be produced and forthcoming the said property to answer the judgment that may be entered in said case, and shall well and truly pay the condemnation-money, whatever it may be, then this bond to be void."

The defendant filed a general demurrer to the petition at the first term, which being overruled, he filed exceptions pendente lite, which were allowed. The defendant also filed an answer admitting possession of the property, but alleging that it was of the value of twenty thousand dollars, and that the title and right of possession of the property was in himself. The answer was amended at the trial term by alleging, among other things, the following in substance: "that on or about" February 23, 1918, the defendant undertook to purchase from the plaintiffs the plantation on which the crops were produced, which was then in possession of "one C. A. Sauls" under a contract of employment with the plaintiffs, the terms of which were unknown to defendant, but, being unable to agree on terms of "an immediate purchase and sale," plaintiffs as parties of the first part and defendant as party of the second part entered into a written contract, which, omitting formal parts, was as follows: "Witnesseth that the parties of the first part hereby

agree to rent, for the year 1918, that certain farm of 1325 acres, more or less, in the 3d land district of Calhoun County, Georgia, known as the Daniel home place, to the party of the second part, on a share-crop basis, that is, the said second party is to farm and operate said place, raising the usual crops suitable to the land, one half of which is to be paid to the parties of the first part as rental of land, which the second party agrees to do. Parties of the first part agree to furnish the second party the farm implements necessary to make the crop, now on said place, also the live stock with which to work the farm, as now on said place, or such substitution of the same as may be agreed upon, and further agree to furnish feed for the stock. It is further agreed that the second party is to care for the stock and land to the very best advantage, watching the interest of the first parties at all times; and the parties of the first part further agree that they will sell and convey the said farm to the second party for a consideration of $36,000.00, provided said option of purchase is exercised on or before November 1, 1918; and in the event the second party should make purchase and pay said sum, then in that event only the first parties waive the payment to them of any rent or share of crop for the year 1918. It is also understood and agreed that second party is to make satisfactory agreement and trade with the party now on said farm, without cost or expense to first parties, before this contract is of any value and effect, as first parties are not to be responsible to second party hereto unless he first trades with the party now in possession for the occupancy of said farm for the year 1918." After execution of the contract defendant made an arrangement with C. A. Sauls, whereby Sauls relinquished possession of the place to the defendant, and he immediately entered possession under the written contract with the plaintiffs. Defendant employed labor to put the lands in cultivation and to put in operation a "13-horse farm" on the place, in the course of which he rented "a 2-horse crop" to one Sam Favors, and employed "5 share-croppers to work 6 plows," and operated "5 plows with wages-hands." Under the terms of the contract the plaintiffs did not retain title to the crops, and the "relation of landlord and cropper" did not exist between plaintiffs and defendant, and plaintiffs had no title or right of possession of the crops, but the same was in defendant and his only obligation as to rental was to pay the plaintiffs one half of the

crops grown on the place for the year 1918, in the event that he did not exercise his option to purchase the place.

At the trial the plaintiffs offered an amendment to the so-called replevy bond, so as to add the words " more or less " immediately following the words " 30 bales of cotton " and " 4000 bushels of peanuts " and the words " 1500 bushels of corn," as contained in the original bond. The amendment was disallowed, and the plaintiffs excepted.

The plaintiffs introduced testimony in substance as follows: Having recently purchased the land, they entered into the written contract with the defendant as copied above, furnished him all the things enumerated, and in addition furnished him guano with which to make the crop and money to meet the monthly payrolls to his hands for labor, amounting in all to about $1944.50. Defendant was to pay for half the guano. He employed all the labor that he used in operating the place. He had supervision of the entire place. Plaintiffs had nothing to do with the hiring or managing the labor " nor with the planting of crops, what kind, when or how much." Defendant did not pay for any of the supplies furnished him, and did not exercise the option to buy the place. Shortly before institution of the suit the labor on the place became demoralized, and the crops were about to go to waste. Plaintiffs demanded possession, which demand was refused. The defendant sold one bale of cotton for $191, and also carried some corn off the place and sold it. Such sale occurred prior to institution of the suit. Practically all other crops were in the field ungathered. The suit was instituted and bail required; and after the defendant's refusal to give bail, plaintiffs made bond and took possession of the crops in order to market them. An agent employed by the plaintiffs harvested and marketed all the crops, keeping an accurate account of all the farm products and their market value. The values amounted to $5573.06. In addition to the parol evidence, the plaintiffs introduced the written contract and closed.

At the conclusion of the evidence the judge granted a nonsuit and dismissed the case. Afterward and on the same day the judge summarily entered judgment on the bond as follows: " The plaintiffs having been nonsuited in the above-stated case, and said case dismissed by order of the court, and it appearing to the court that the property sued for in said case was replevied by the plaintiffs

(the defendant having failed to replevy the same) by said plaintiffs giving the within bond and taking possession of said property, and the defendant having elected to take a money judgment for the value of said property instead of a writ of restitution, and it appearing to the court that the plaintiffs have placed a value of $10,000.00 on said property by their affidavit to obtain bail, and counsel for defendant having moved the court to be allowed to enter up judgment on said bond against the principals thereon and their sureties for said sum of $10,000.00 and interest thereon: It is thereupon considered, ordered, and adjudged by the court that the defendant, C. E. Mitchem, do have and recover of and from Williams & McCollum and T. J. Williams, as principals, and D. A. Smith, K. S. Worthy, G. A. Dozier, and J. M. Clements, as sureties, the sum of $10,000.00 principal, with interest thereon from September 2nd, 1918, at 7% per annum, and $—— costs." The plaintiffs excepted to the judgment of nonsuit, and to the judgment on the bond. In the bill of exceptions error was assigned on the exceptions pendente lite, relating to rejection of the amendment to the replevy bond, and on certain rulings as to the admissibility of evidence, which have not been set forth. The defendant filed a cross-bill of exceptions assigning error upon the judgment overruling the demurrer to the petition; also upon the judgment allowing the amendment to the petition; also upon the ruling of the court in permitting witnesses to testify as to the amount and value of the crops produced on the place, over the objection that it was irrelevant. On review in the Court of Appeals the judgment of the trial court was affirmed on the main bill, and the cross-bill of exceptions was dismissed. The case is here for decision upon writ of certiorari to the judgment of the Court of Appeals, on the main bill of exceptions.

*R. R. Jones, Pottle & Hofmayer,* and *C. J. Taylor,* for plaintiffs.

*B. W. Fortson,* for defendant.

ATKINSON, J. 1. The petition as amended alleged that the defendant was in possession of described property of stated value, to which the plaintiffs in good faith claimed title; and that he refused to surrender such possession on demand by plaintiffs. Included among the several properties so described in the petition was " one bale of cotton in seed, gathered." This part of the property was personalty; and relatively to that, the petition set forth a cause of action under the Civil Code, § 4483, which declares: " In actions

to recover the possession of chattels, an alternative verdict in damages to be discharged on delivery of the property may be taken; but it shall not be necessary to prove any conversion of the property where the defendant is in possession when the action is brought." It was not erroneous to overrule the general demurrer, which was addressed to the petition in its entirety, and merely complained that the petition " sets forth no cause of action," that " the allegations of the petition are not sufficient to support a recovery of the property sued for by the plaintiff," and that " no title or right of title or right of possession of the property sued for is shown in the plaintiff."

2. The burden was upon the plaintiffs to show title to the property. It is declared in the Civil Code, § 3707: " Where one is employed to work for part of the crop, the relation of landlord and tenant does not arise. The title to the crop, subject to the interest of the cropper therein, and the possession of the land remain in the owner." In § 3705 it is declared: " Whenever the relation of landlord and cropper exists, the title to and right to control and possess the crops grown and raised upon the lands of the landlord by the cropper shall be vested in the landlord until he has received his part of the crops so raised, and is fully paid for all advances made to the cropper in the year said crops were raised to aid in making said crops." In *Hancock* v. *Boggus,* 111 *Ga.* 884 (36 S. E. 970), it is said: " When it is shown that a landowner entered into a contract with another person, by the terms of which the owner was to furnish the land, stock, tools, and supplies to make a crop, and the other person was to do the work and receive a part of the crop so made, the legal relation which existed between them was that of landlord and cropper." See also *Hackney* v. *State,* 101 *Ga.* 512, 516, 517 (28 S. E. 1007). The contract between the plaintiffs and the defendant is set out in the statement of facts, and need not be repeated. It established the relation between the parties, and, properly construed, created the relation of landlord and cropper, as defined in the Civil Code, § 3707. Such being the relation between the parties, legal title and the right to control and possess all the crops raised on the place by the defendant was vested in the plaintiffs until they received their part of the crops and were fully paid for all advances made to the cropper during the year to aid in making the crops. The defendant, without consent of the owners, could not

gather, carry away, and sell a portion of the crop and convert the proceeds to his own use, without being guilty of a wrongful conversion.

3. The plaintiffs introduced evidence to the effect that of the property described in the petition the defendant carried away and sold one bale of cotton for $191, before the suit was instituted. This was sufficient basis for a verdict for the plaintiffs, relatively to that part of the property; and it was erroneous to grant a nonsuit and dismiss the entire action.

4. The greater part of the property sought to be recovered consisted of crops attached to the soil, most of which was mature. The Court of Appeals ruled that such crops were a part of the realty, and therefore that the plaintiffs could not invoke the remedy provided in the Civil Code, § 4483, which applies only to actions for recovery of personalty. That ruling is consonant with the decision of this court in the case of *Newton County* v. *Boyd,* 148 *Ga.* 761 (98 S. E. 347), where it was held: " A crop of corn not detached from the soil, whether mature or immature, is a part of the realty, and passes by sale of the land without contractual reservation of the crop. Civil Code, § 3617; *Pitts* v. *Hendrix,* 6 *Ga.* 452; *Frost* v. *Render,* 65 *Ga.* 15; *Bagley* v. *Columbus Southern Ry. Co.,* 98 *Ga.* 626 (25 S. E. 638, 34 L. R. A. 286, 58 Am. St. R. 335). See also 8 R. C. L. 360, 371, §§ 6, 16; Cobb's Law of the Farm, 13." As to this part of the property trover would not lie, but that would not afford ground for nonsuiting the entire action, the plaintiffs having alleged and proved a case for recovery as to some part of the property, as heretofore indicated.

5. In the light of the several rulings in the preceding divisions, it is unnecessary to rule on the assignments of error on the admission of evidence. The same questions will not likely arise when the case is returned to the trial court.

6. Another assignment of error challenges the correctness of the judgment on the bond. The Civil Code, § 5150, declares: " Where any person who is about to commence an action for the recovery of personal property shall require bail, such person, his agent, or attorney shall make affidavit that the property is in the possession, custody, or control of the defendant, and that he has reason to apprehend that the said personal property has been or will be eloigned or moved away, or will not be forthcoming to answer the judgment,

execution, or decree that shall be made in the case; and shall also state in his affidavit the value of the same, and the amount of hire claimed, if any, and add that he does verily and bona fide claim said personal property, or some valuable interest therein." § 5151 declares: " When such affidavit is made as prescribed in the preceding section, it shall be filed in the clerk's office of the court to which said petition, bill, or other process may be returnable, and a copy thereof affixed to the original petition, or process, and to the copy or copies thereof; and it shall be the duty of the sheriff, or other lawful officer serving such petition or other process, to take a recognizance payable to the plaintiff or complainant, with good security, in double the amount sworn to, for the forthcoming of such personal property to answer such judgment, execution, or decree as may be rendered or issued in the case, and such security shall be bound for the payment of the eventual condemnation-money, for which judgment may be signed up against the defendant and said security, and execution had thereon without further proceeding." In § 5152 it is provided: " And upon defendant failing to give such security, whether the affidavit be made at the commencement of the suit or pending the same, the property shall be seized and taken by the sheriff or other lawful officer and delivered over to the plaintiff or complainant, his agent or attorney, upon his entering into like recognizance with security." These sections are to be construed in connection with section 4483, quoted in the first division, and apply only in actions for the recovery of personalty. If the action had been called trover but was for recovery of a tract of land, palpably it would not have been the kind of action contemplated by the statute, and a so-called " forthcoming bond " for the production of the property to answer the judgment of the court would not be a statutory bond, within the meaning of the law. So, also, where the action is for recovery both of personalty and realty, a " forthcoming bond " given for all the property at twice its value is not the bond contemplated by the statute. In the latter case there is no authority of law for bail relatively to the realty. Bond is required by the statute relatively to personalty, but in such case the amount of the bond is twice the value of the personalty. Where a " forthcoming bond " is given for both realty and personalty, the court can no more render a summary judgment under the Civil Code, § 5151, against the principal and sureties on the bond, than it could,

in an action of trover under the Civil Code, § 4483, render judgment for recovery of the realty. *Roney* v. *McCall,* 128 *Ga.* 249 (57 S. E. 503); *Fitzgerald Military Band* v. *Colony Bank,* 115 *Ga.* 790 (42 S. E. 70). In the case of *Glover* v. *Gore,* 74 *Ga.* 680, it appears that an action was instituted to recover certain crops grown on specified land, some of which had been gathered and some was still attached to the soil. The plaintiff sued out bail in trover under the statute which is now in Civil Code, §§ 5151, 5152. The defendants refused to give bail, and thereupon the plaintiff gave bond and took possession of and gathered the crops. The plaintiff having been nonsuited, the court did not, as in the present case, enter summary judgment against the plaintiff and his sureties on the forthcoming bond; but the defendants proceeded with this common-law remedy by separate action on the bond, and were allowed to recover. See *Stephens* v. *Crawford,* 3 *Ga.* 499 (3); *Justices* v. *Ennis,* 5 *Ga.* 569; *Wall* v. *Mount,* 121 *Ga.* 831, 834 (49 S. E. 778), and cit.; *Mount* v. *Wall,* 127 *Ga.* 211 (56 S. E. 298); *Spooner* v. *Smith,* 134 *Ga.* 323 (67 S. E. 813).

It was erroneous for the trial judge, after nonsuiting the plaintiffs, to enter summary judgment against the principals and sureties on the bond, for an amount alleged in the affidavit for bail to be the value of the realty and personalty. Should the defendant bring a separate action on the bond on the basis that the principals obtained possession of all of the property under the bond, and that it was valid as a common-law bond, the rights and equities of all parties involved in the crops which were taken possession of by the principals named in the bond could be adjusted.

The case differs on its facts from *Marshall* v. *Livingston,* 77 *Ga.* 21; *Smith* v. *Adams,* 79 *Ga.* 802 (5 S. E. 242); *Lauchheimer* v. *Jacobs,* 126 *Ga.* 261 (5), 268 (55 S. E. 55); *Pope* v. *Scott,* 143 *Ga.* 275 (2), 276 (84 S. E. 582); *Petty* v. *Piedmont Fertilizer Co.,* 146 *Ga.* 149 (2), 151 (90 S. E. 966), in each of which the action was properly brought in trover for the recovery of personalty, and the bond given was in compliance with the statute.

The judgment of the Court of Appeals, affirming the judgment of nonsuit and the summary judgment of the trial court on the bond, must be reversed.

*Judgment reversed. All the Justices concur.*

GEORGE, J., concurring specially.  Matured crops, ready to be harvested, though standing in the field, when produced by annual cultivation, are no part of the realty.  Such crops must, for most civil purposes, be deemed personalty.  This is a workable rule, and the only workable rule.  A distinction is to be observed between the natural growth of the soil, such as trees, grasses, and the like, which at common law are parts of the soil, and products the result of the annual labor of man in sowing and reaping, planting and gathering.  In my opinion, therefore, the plaintiffs' petition set forth a cause of action for recovery of the property described therein, and should not have been dismissed on demurrer.

The plaintiffs' petition was for the recovery of the crop as personalty.  One of them made the affidavit prescribed by statute, to require the defendant to give bail.  The defendant having failed to make bond, the plaintiffs executed a bond and took possession of the crops.  This court has uniformly held that a party will not be permitted to assert inconsistent positions, and is bound by solemn admissions in judicio.  In the opinion of the writer, the court is not authorized to afford to the plaintiffs relief against the judgment on the bond, on the theory indicated in the 6th division of the decision.  But, for the reasons already stated, the plaintiffs were entitled to recover the property sued for, under the allegations of the petition.  I therefore concur in the judgment of reversal, but not in the rulings stated in the 4th and 6th headnotes, nor in the reasoning set out in the corresponding divisions of the opinion of the court.